UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

UNITED NATURAL FOODS, INC.,

Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 117 & LOCAL 313,

Defendants.

Case No.

# **COMPLAINT**

United Natural Foods, Inc. ("UNFI" or the "Company"), by its attorneys, brings this action against the International Brotherhood of Teamsters Local 117 ("Local 117") and Local 313 ("Local 313") (collectively the "Unions") to vacate an arbitration award dated October 7, 2019 ("Award"). The Award contradicts fundamental requirements imposed by the National Labor Relations Act, 29 U.S.C. § 151 et seq. ("NLRA" or "Act"); the Award is contrary to public policy and is repugnant to the NLRA; the Award addresses matters that are not arbitrable and are exclusively within the jurisdiction of the National Labor Relations Board ("NLRB" or "Board"); the Award is contrary to the requirement imposed by federal law mandating that any bargaining unit "in each case" be "appropriate" (NLRA § 9(b), 29 U.S.C. § 159(b)); the Award fails to draw its essence from and exceeds the arbitrator's authority under the relevant collective bargaining agreements ("CBAs"); and the Award is not within the scope of the parties' agreement to arbitrate as reflected in the CBAs.

# PARTIES

1. UNFI is a Delaware corporation with nationwide operations engaged in the business of wholesale grocery distribution. UNFI is an employer within the meaning of Section 2(2) of the NLRA, 29 U.S.C. § 152(2), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). UNFI's headquarters are located at 313 Iron Horse Way, Providence, RI, 02908. An affiliate of UNFI, SVU Holdings Operations Company LLC, operates a distribution center located at 1525 East D Street, Tacoma, WA 98421 (the "Tacoma facility"). Another affiliate of UNFI, Centralia Holdings LLC, operates a distribution center located at 4002 Galvin Road, Centralia, WA 98531 (the "Centralia facility").

2. The Unions are labor organizations within the meaning of Section 2(5) of the NLRA, 29 U.S.C. § 152(5), and Section 301 of the LMRA, 29 U.S.C. § 185.

3. Local 117 is the exclusive bargaining representative of a bargaining unit consisting of employees in certain warehouse and other classifications at the Tacoma facility (the "Tacoma warehouse bargaining unit"), and a separate bargaining unit consisting of employees in certain inventory control and other classifications at the Tacoma facility (the "Tacoma inventory control bargaining unit"). Local 117 maintains an office located at 14675 Interurban Ave. S. Ste. # 307 Tukwila, WA 98168.

4. Local 313 is the exclusive bargaining representative of a bargaining unit consisting of employees in certain warehouse clerks and other classifications at the Tacoma facility (the "Tacoma clerks bargaining unit"), and a separate bargaining unit consisting of employees in certain driver classifications at the Tacoma facility (the "Tacoma drivers bargaining unit"). Local 313 maintains an office located at 220 South 27th Street Tacoma, Washington 98402.

## JURISDICTION AND VENUE

5.  The claims asserted in this Complaint are brought under Section 301 of the LMRA, 29 U.S.C. § 185.

6.  This Court has jurisdiction of this matter under Section 301 of the LMRA, 29 U.S.C. § 185, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, and 28 U.S.C. §§ 1331 and 1337.

7.  Venue in this District is proper under 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 185. This is a judicial district in which Defendant's duly authorized officers or agents have been engaged in representing or acting for employee members at all relevant times; where the events giving rise to the Union's grievance occurred; and where the arbitration hearing was held.

8.  This action is timely filed under applicable Washington law, RCW 7.04A.230, within 90 days after UNFI received delivery of a copy of the Arbitrator's award dated October 7, 2019.  A true and correct copy of the Award is attached hereto as Exhibit A.

## FACTS

9.  UNFI's predecessor, SuperValu, Inc., and Local 117 entered into a collective bargaining agreement covering the Tacoma warehouse bargaining unit effective from July 15, 2018 to July 17, 2021.[1]  A true and correct copy of this agreement (the "Tacoma Warehouse CBA") is attached hereto as Exhibit B.[2]

---

[1] United Natural Foods, Incorporated acquired SuperValu, Inc. in or around October 2018. SuperValu, Inc. was signatory to the CBAs relevant to this matter, but for consistency and ease of reference, this Complaint refers to the employer as UNFI throughout.

[2] UNFI's predecessor, SuperValu, Inc., and Local 117 also entered into a collective bargaining agreement covering the Tacoma inventory control bargaining unit effective from July 15, 2018 to July 17, 2021.  However, the dispute at issue in the instant case does not involve or arise under the Tacoma inventory control CBA.

10. UNFI's predecessor, SuperValu, Inc., and Local 313 entered into a collective bargaining agreement covering the Tacoma clerks bargaining unit effective from July 15, 2018 to July 17, 2021.  A true and correct copy of this agreement (the "Tacoma Clerks CBA") is attached hereto as Exhibit C.[3]

11. UNFI's predecessor, SuperValu, Inc., and Local 313 entered into a collective bargaining agreement covering the Tacoma drivers bargaining unit effective from July 15, 2018 to July 17, 2021.  A true and correct copy of this agreement (the "Tacoma Drivers CBA") is attached hereto as Exhibit D.[4]

12. The Local 117 and Local 313 CBAs each contain provisions regarding dispute resolution, grievance processing, and arbitration.

13. UNFI acquired SuperValu, Inc. on or about October 22, 2018 and became party to the Local 117 and Local 313 CBAs, in relation to represented employees in the Tacoma bargaining units, as a successor to SuperValu, Inc.

14. On or about February 5, 2019, UNFI announced that it would consolidate its Tacoma, Washington and Portland, Oregon facilities, which would be replaced by a larger, newly constructed distribution center in Centralia, Washington; and UNFI announced that, in connection with the opening of the Centralia distribution center, the Tacoma facility and Portland facility would be closed.

---

[3] The Award focused primarily on Local 117, but stated that "the decision applies to both Local 117 and Local 313."  Exh. A at 2 n.1.

[4] There is no current dispute involving a union claim that UNFI is required to apply the Tacoma Drivers CBA at the Centralia facility, but this Complaint encompasses the Tacoma Drivers CBA to the extent the Award is deemed to have any application to the Tacoma Drivers CBA.

15. The employees at the Portland, Oregon distribution center are represented by different unions (Teamster Local Unions 162, 206, and 305) and are covered by different CBAs than the CBAs applicable to the UNFI employees in Tacoma who are represented by Teamsters Locals 117 and 313.

16. The Centralia warehouse operations are not divided in any fashion based on whether a customer or employee came from Tacoma or Portland or was new to the Centralia operation. The Centralia facility does or will include a produce operation that has not existed in Tacoma. The Centralia facility has a single classification, "Warehouse Worker," encompassing forklift, selection, loading and receiving. Employees in Centralia have the same managers regardless of whether the employees previously worked in Portland or Tacoma or were new to the Centralia operation. Employees in Centralia have the same supervisors regardless of whether the employees previously worked in Portland or Tacoma or were new to the Centralia operation. Employees in Centralia will be performing the same warehouse work, regardless of whether the employees previously worked in Portland or Tacoma or were new to the Centralia operation.

17. As of the filing of this Complaint, more than 200 employees have been hired at the Centralia facility in "Warehouse Worker" positions who did not previously work at the Tacoma facility and were not previously represented by Local 117 or Local 313.

18. When the Centralia facility becomes fully operational, there will be approximately 500 employees working as Warehouse Workers at the facility. UNFI has encouraged Tacoma employees to apply for employment at the Centralia facility. There is no certainty that a significant number of Tacoma employees will seek, accept or commence such employment, or that former Tacoma employees will ever comprise a majority of Warehouse Workers at the

Centralia facility, or that a majority of Warehouse Workers at the Centralia facility will desire or support representation by Local 117 or Local 313 or any other union.

19. The Local 117 and Local 313 CBAs contain dispute resolution provisions providing for grievance arbitration (Tacoma Warehouse CBA, Exh. B, §§ 23.01-23.16; Tacoma Clerks CBA, Exh. C, §§ 15.1-15.16; Tacoma Drivers CBA, Exh. D, §§ 22.1-22.14).  Each of these CBAs contains a provision, captioned "Limited Powers," that restricts the authority of any arbitrator as follows:

> Limited Powers.  A Board or Arbitrator shall have *no power to add to or subtract from or to disregard, modify or otherwise alter any terms of this or any other agreement(s)* between the Union and Employer *or to negotiate new agreements*. Board and/or Arbitrator powers are limited to interpretations of and a decision concerning *appropriate application of the terms of this Agreement or other existing pertinent agreements(s), if any*.

Tacoma Warehouse CBA, Exh. B, § 23.05; Tacoma Clerks CBA, Exh. C, § 15.5; Tacoma Drivers CBA, Exh. D, § 22.5 (emphasis added).[5]

20. In or around March 2019, the Unions filed grievances alleging that UNFI violated the Agreements by failing to apply those Agreements and/or their terms to employees at the consolidated UNFI facility in Centralia.  The grievances were denied by UNFI.

21. The parties agreed to arbitrate the dispute described in paragraph 20 above, based on the dispute resolution provisions in the Local 117 and Local 313 CBAs, and based on a separate arbitration agreement which stated, among other things, that "the Company may proceed to arbitration *without prejudice to and without waiving any rights, arguments, and defenses it has*

---

[5] The Tacoma Clerks CBA contains the identical text as quoted above, except instead of the phrase "appropriate application of the terms of this Agreement" it states "appropriate application of this Agreement." Tacoma Clerks CBA, Exh. C, § 15.5.

*or may have regarding the merits and/or arbitrability of the grievances*." Exh. A at 5 (emphasis added).

22. The dispute described in paragraph 20 above was the subject of a grievance arbitration hearing held on August 6 and 7, 2019 before arbitrator Joseph W. Duffy, who issued an Opinion and Award dated October 7, 2019 (the "Award").

23. The Award found that UNFI violated the CBAs by failing to apply the terms of the Tacoma Warehouse CBA and the Tacoma Clerks CBA to employees at the Centralia distribution center. Specifically, the Award stated that UNFI was required, among other things, to "afford all employees working under the terms of the Agreement at the Tacoma facility the opportunity to work at the Centralia facility under the same terms and conditions and without any loss of seniority or other contractual rights or benefits . . ." (Exh. A at 18), and the Award imposed the following remedy:

   a. Allow employees at the Tacoma facility to transfer to Centralia under the same terms and conditions that they have in Tacoma.

   b. Reinstate, make whole and also allow any employees laid off in the first wave(s) of layoffs in Tacoma to transfer to Centralia under the same terms and conditions that they had in Tacoma.

Exhibit at A at 18-19.

24. The Award contradicts fundamental requirements imposed by the NLRA, 29 U.S.C. § 151 et seq. the Award is contrary to public policy and is repugnant to the NLRA; the Award addresses matters that are not arbitrable and are exclusively within the jurisdiction of the NLRB; the Award is contrary to the requirement imposed by federal law mandating that any bargaining unit "in each case" be "appropriate" (NLRA § 9(b), 29 U.S.C. § 159(b)); the Award fails to draw

its essence from and exceeds the arbitrator's authority under the relevant CBAs; and the Award is not within the scope of the parties' agreement to arbitrate as reflected in the CBAs.

25. The Award invents "contractual" rights for two subgroups of Centralia employees: individuals from Tacoma who, while working as employees at Tacoma, were covered by CBAs negotiated by Local 117 or Local 313, and who may apply for, accept and commence working in positions at the Centralia facility. By creating these "contractual" rights for two subgroups of Centralia employees, the Award does violence to fundamental labor law principles that render the Award legally untenable and unenforceable. Most egregious is the Award's legally flawed premise that isolated "terms" of the Tacoma CBAs – involving "seniority," "wages, hours, benefits and working conditions" (Award at 18) – can be transplanted to a completely different facility (in Centralia), because the NLRA squarely prohibits what the Award requires.

26. The NLRA makes it unlawful for negotiated contract terms to be applied at a facility like Centralia – even if those contract terms have been agreed upon by an employer and union – unless *a "majority"* of employees who are *actually working* at the facility *in an "appropriate" bargaining unit* have *"selected or designated"* the union to be their representative. NLRA § 9(a), 29 U.S.C. § 159(a) (emphasis added). The NLRA further provides that bargaining unit employees may only select or designate *a single union* to represent them, which then must serve as the "exclusive" representative *for all employees*. *Id.*

27. The Award turns the above fundamental principles on their head. For example, the Award requires the imposition of collectively bargained Tacoma contract terms on Centralia employees, while completely disregarding the "majority support" principle that is the cornerstone of the NLRA. The Award makes no finding that a "majority" of Centralia

employees supports representation by Local 117 or Local 313, nor would such a finding be supportable given that more than 200 employees are currently working in the Centralia facility, and *none of the current Centralia employees* previously worked at Tacoma or were represented by Local 117 or 313. Moreover, the Award repudiates the NLRA's bedrock principle of "exclusive" representation by a *single union*, by requiring UNFI to impose contract terms at Centralia that were negotiated by *two unions* – Local 117 and Local 313.

28.   In addition to the above legal problems, the Award selectively picks and chooses among provisions in the Local 117 and Local 313 Tacoma CBAs – finding that UNFI must impose on Centralia employees those Tacoma contract terms involving "seniority," "wages, hours, benefits and working conditions" (Award at 18) – while disregarding Tacoma contract terms involving union "representation." *Id.* In this regard, the Award states that "the representation issue is not subject to this arbitration." *Id.* The Award disregards the fact that any imposition of collective bargaining agreement terms *inherently* requires the consideration of whether union "representation" is permissible and lawful under the NLRA – specifically, whether a "majority" of employees in an "appropriate" bargaining unit have "selected or designated" a single union to be the "exclusive" representative of "all" bargaining unit employees. NLRA § 9(a), 29 U.S.C. § 159(a). Moreover, the Award's selective imposition of certain contract terms taken from the Tacoma CBAs, while excluding *other* contract terms dealing with "representation" by Locals 117 and 113, respectively, is irreconcilable with the express limitations on the arbitrator's authority contained in the Tacoma CBAs, which state the arbitrator "shall have no power to . . . *subtract from or to disregard* . . . any terms of this . . .

agreement[]. . . ." Tacoma Warehouse CBA, Exh. B, § 23.05; Tacoma Clerks CBA, Exh. C, § 15.5; Tacoma Drivers CBA, Exh. D, § 22.5 (emphasis added).

29. More specifically, the defects in the Award include but are not limited to the following examples:

(a) <u>No Finding of "Appropriate" Bargaining Unit in Centralia</u>. The NLRA only permits imposing collectively bargained contract terms on employees that comprise a bargaining unit that is "appropriate" for purposes of collective bargaining (NLRA § 9(a), 29 U.S.C. § 159(a)). This requires a determination (among other things) of whether the "appropriate unit" should be a "plant unit" or "subdivision thereof," and the NLRA requires this determination to be made by the NLRB "in each case" in order to "assure to employees the fullest freedom in exercising the rights guaranteed by [the] Act." 29 U.S.C. § 159(b). At the Centralia facility, there has been no determination of the "appropriate" bargaining unit, which is exclusively within the jurisdiction of the NLRB.

(b) <u>The Award Improperly Disregards the Interests of Non-Tacoma Employees at Centralia</u>. Not only must an "appropriate" bargaining unit be determined in relation to any imposition of collectively bargained contract terms on employees, the NLRB has emphasized that such determinations may *not* be limited to the interests of a particular subset of employees (as to whom a union seeks representation), because – when determining what is an "appropriate" unit – the NLRA requires consideration of "the Section 7 rights of employees *excluded* from the proposed unit" in addition to the interests of "those included in that unit." *PCC Structurals, Inc.*, 365 NLRB No. 160, slip op. at 8 (2017). Contrary to this requirement, the Award impermissibly focuses on a subset of Centralia employees (those who previously worked at the Tacoma facility), without any consideration of the interests of other Centralia employees.

(c) <u>The Smallest "Appropriate" Bargaining Unit in Centralia Consists of All Warehouse Workers</u>. The Award purports to impose Tacoma collectively bargained contract terms (contained in the Local 117 and Local 313 CBAs) on a subset of employees at the Centralia facility who previously worked at the Tacoma facility in positions represented by Locals 117 or 313, respectively. However, at the Centralia facility, the structure of operations, including the existence of a single employee job classification, and other facts establish that the smallest "appropriate" bargaining unit would encompass all Warehouse Workers, regardless of whether they formerly worked at the Tacoma facility, the Portland facility, or were new to the Centralia facility. *PCC Structurals*, 365 NLRB No. 160 (2017).

(d) <u>The Award Disregards the Requirement of "Exclusive" Representation by a Single Union</u>. The NLRA only permits the imposition of collectively bargained contract

terms on employees within a facility when a particular union has been "designated or selected" by "*the majority* of the employees in a unit appropriate for . . . purposes" of collective bargaining, and when such a designation has occurred, the NLRA requires that the particular union be the *"exclusive"* representative for "*all* the employees *in such unit*" (NLRA § 9(a), 29 U.S.C. § 159(a) (emphasis added). The Award is irreconcilable with this fundamental principle of "exclusive" representation by a single union in an "appropriate" bargaining unit (*id.*) because the Award imposes collectively bargained contract terms negotiated by *two unions* (Locals 117 and 313) on Centralia warehouse employees.

(e) Absence of "Majority" Support for Local 117 or 313 Among Centralia Employees. As of the filing of this complaint, UNFI has more than 200 employees working in the Warehouse Worker classification at the Centralia facility, *none of whom* have designated or selected Local 117 or Local 313 to represent them for purposes of collective bargaining. Moreover, although the NLRB only permits the imposition of collectively bargained contract terms when *a "majority"* of employees in an appropriate unit have designated or selected a particular union to represent them (*id.*), there is no certainty that former Tacoma employees represented by Local 117 or Local 313 will *ever* comprise an employee majority at the Centralia facility.

(f) Unlawful Union-Related Discrimination Among Centralia Employees. The NLRA prohibits unions from causing (or attempting to cause) an employer "to discriminate" against employees based on union-related considerations, which either encourage or discourage union membership (NLRA § 8(b)(2), 29 U.S.C. § 158(b)(2)). The Award violates this prohibition by overtly forcing UNFI to "discriminate" between Centralia employees, if any, who were previously represented by Local 117 or 313 at the Tacoma facility (to whom the Award would require the imposition of collectively bargained Tacoma contract terms) and all other employees doing precisely the same work in the same job classification at the Centralia facility (to whom the Award does not apply).

(g) The Award Imposes Employment Terms on ALL Centralia Employees, and/or Creates Inappropriate, Multiple Centralia Bargaining Units. The Award imposes employment terms on *all* Centralia employees because requiring UNFI to recognize Tacoma-based "seniority [and] other contractual rights or benefits" for Centralia employees who were formerly represented by Locals 117 and 313 in Tacoma (Exh. A at 18) disadvantages other Centralia employees to whom the same rights and benefits do not apply, and it creates multiple distinct bargaining units in Centralia which are inconsistent with the structure and organization of employees and operations there.

(h) The Award Violates LMRA Section 302. The Award's requirement that UNFI continue Tacoma-based pension "benefits" for Centralia employees who were formerly represented by Locals 117 and 313 in Tacoma (Exh. A at 18) violates Section 302 of the LMRA, because (1) the Award discusses Teamsters Pension Trust Fund payments as among the "benefits" required by the Tacoma CBAs (*id.*);

(2) LMRA Section 302 *prohibits* employer payments to union pension plans unless "the detailed basis on which such payments are to be made is specified in *a written agreement with the employer*" (29 U.S.C. § 185(c)(5)(B) (emphasis added)); and (3) the NLRA prohibits UNFI from entering into any Centralia collective bargaining agreement with Locals 117 and 113 based on the considerations described in subparts (a) through (g) above.

(i) <u>The Award Exceeds the Arbitrator's Authority By Subtracting From Tacoma CBA Provisions</u>.  The CBAs expressly state that the arbitrator "*shall have no power to . . . subtract from or to disregard . . .* any terms of this or any other agreement(s) between the Union and Employer." *See* Tacoma Warehouse CBA, Exh. B, § 23.05; Tacoma Clerks CBA, Exh. C, § 15.5; Tacoma Drivers CBA, Exh. D, § 22.5 (emphasis added). The Award disregards and exceeds this limitation on the arbitrator's authority by requiring UNFI to selectively impose only certain Tacoma contract terms on Centralia employees (*i.e.*, contract terms that the arbitrator describes as addressing "wages, hours, benefits and working conditions") while disregarding other fundamental contract terms in the Tacoma CBAs (including Tacoma contract terms relating to union recognition, union security, union dues, among other things).

30.  The Unions' actions associated with the Award – imposing Tacoma contract terms on Centralia employees, imposing Union representation on Centralia employees, doing so in disregard for what constitutes an "appropriate" bargaining unit, causing UNFI to discriminate among Centralia employees based on their prior representation by the Unions, insisting on altering and enlarging the scope of the Tacoma bargaining units, and enforcing the Award – violate Sections 8(b)(1)(A), 8(b)(2) and 8(b)(3) of the NLRA.

31.  UNFI has filed with the NLRB an unfair labor practice charge alleging, among other things, that the Unions and the Award are unlawful and unenforceable based on the violations of Sections 8(b)(1)(A), 8(b)(2) and 8(b)(3) of the NLRA.

## CLAIMS FOR RELIEF

32.  UNFI repeats and re-alleges paragraphs 1 through 31 as though fully set forth herein.

33. Consistent with the above allegations, UNFI respectfully requests that this Court vacate set it aside the Award in its entirety, and that the Court grant such other relief as it deems appropriate.

[remainder of this page is intentionally left blank]

WHEREFORE, UNFI respectfully requests that this Court grant judgment vacating the Award in its entirety, and award such other relief as may be just and proper.

Respectfully submitted,

JASON S. MILLS
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue,
Los Angeles, CA 90071-3132
213.612.2500 (phone)
213.612.2501 (fax)
jason.mills@morganlewis.com

PHILIP A. MISCIMARRA*
LAUREN M. EMERY*†
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
202.739.3000 (phone)
202.739.3001 (fax)
philip.miscimarra@morganlewis.com
lauren.emery@morganlewis.com

W. JOHN LEE*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
215.963.5000 (phone)
215.963.5001 (fax)
w.john.lee@morganlewis.com

DATED: October 28, 2019

*To be admitted *pro hac vice*
†Admitted in Illinois only; Practice supervised by DC Bar members

Complaint   -14-   Jason S. Mills, Morgan, Lewis & Bockius LLP
300 South Grand Avenue, Los Angeles, CA 90071
213.612.2500