1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED NATURAL FOODS, INC,

                  Plaintiff,

     v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL 117, et al.,

                Defendants.

CASE NO. 2:19-CV-01736-LK

ORDER REMANDING CASE TO
ARBITRATOR

       Defendants International Brotherhood of Teamsters Locals 117 and 313 (the "Unions")
move the Court for an order remanding this case to the arbitrator to complete the "make whole"
remedy set forth in his October 2019 award. Dkt. No. 91 at 2. Plaintiff United Natural Foods, Inc.
("UNFI") opposes the motion, maintaining that there "is no contractual or legal basis for this case
to be returned to arbitration[.]" Dkt. No. 93 at 5. The Court grants the Unions' motion in part.

## I.  BACKGROUND

       Although the Court has already detailed the facts of this case, Dkt. No. 79 at 1–8, it recounts
some of them here for ease of reference. UNFI and the Unions were parties to three collective

bargaining agreements ("CBAs"), each of which was effective between July 15, 2018 and July 17, 2021, and each of which contained a materially identical movement provision regarding transferred employees' rights. *Id.* at 1. After UNFI announced its plan to close its Tacoma facility and transfer the employees stationed there to its new Centralia distribution center, the parties disagreed over the meaning of the movement provision—a dispute that culminated in a formal grievance against UNFI and, in August 2019, a two-day arbitration before Mr. Joseph Duffy. *Id.* at 1–3; *see* Dkt. Nos. 1-2–1-4 (CBAs).[1]

Arbitrator Duffy issued his Opinion and Award in October 2019. Dkt. No. 79 at 3–6 (discussing opinion and award in detail); *see* Dkt. No. 1-1 (October 2019 Opinion and Award). As relevant here, he sustained the Unions' grievance and ordered UNFI to implement the following remedy:

> 1. Allow employees at the Tacoma facility to transfer to Centralia under the same terms and conditions that they have in Tacoma, and;
>
> 2. Reinstate, make whole and also allow any employees laid off in the first wave(s) of layoffs in Tacoma to transfer to Centralia under the same terms and conditions that they had in Tacoma.

Dkt. No. 1-1 at 21. Arbitrator Duffy also expressly retained jurisdiction for 60 days from the date of the award "for the sole purpose of aiding the Parties in the implementation of the remedy." *Id.* UNFI immediately sued the Unions in federal district court seeking to vacate the October 2019 Award. Dkt. No. 79 at 6; *see* Dkt. No. 1 at 1, 13. The Unions answered by counterclaiming under the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), asking the Court to confirm and enforce the October 2019 Award and alleging that UNFI breached the CBAs by refusing to abide by Arbitrator Duffy's decision. Dkt. No. 79 at 6; *see* Dkt. No. 9 at 9, 13–15 (answer).

---

[1] As previously noted, the three CBAs include mostly identical language with minor variations that are inconsequential with respect to this litigation. Dkt. No. 79 at 2 n.1.

1    Following a several-month stay in connection with UNFI's filing of an unfair labor practice

2    charge with the National Labor Relations Board ("NLRB"),[2] the parties returned to district court

3    and cross-moved for summary judgment. Dkt. No. 79 at 7–8 (discussing stay for NLRB

4    proceedings); *see* Dkt. Nos. 53, 58 (orders granting and lifting stay); Dkt. Nos. 70–71 (cross-

5    motions for summary judgment). The Court granted in part and denied in part the Unions' motion

6    and wholesale denied UNFI's. Dkt. No. 79 at 1–2, 26. More specifically, the Court (1) upheld the

7    October 2019 Award but (2) denied as premature the Unions' bid for injunctive relief to enforce

8    the award and (3) concluded that UNFI did not breach the CBAs by attempting to vacate the award

9    and filing an unfair labor practice charge with the NLRB. Dkt. No. 79 at 10–16, 23–26. The Court

10   also directed the parties to file a joint status report with "a proposed briefing schedule regarding

11   the issues of remedies and whether a remand to the arbitrator is warranted to allow the arbitrator

12   to fashion an appropriate remedy." *Id.* at 26.

13    In September 2022, the parties jointly requested leave to engage in settlement discussions

14   before proposing a briefing schedule on remedies and remand. Dkt. No. 80 at 1–2. The Court

15   granted this motion. Dkt. No. 81 at 1–2. And it subsequently permitted the parties additional time

16   to attend mediation sessions in January and March 2023. *See* Dkt. No. 83 at 1–2 (motion for

17   additional time to participate in January 2023 mediation); Dkt. No. 84 (minute order granting

18   motion); Dkt. No. 86 at 1–2 (motion for additional time to participate in March 2023 mediation);

19   Dkt. No. 87 (minute order granting motion). The parties were not, however, able to reach a

20

21   ---
[2] The NLRB issued a consolidated complaint against the Unions alleging that they violated the National Labor
Relations Act by seeking to enforce the CBAs despite not representing a majority of the employees at Centralia,
22   attempting to cause UNFI to discriminate against its Centralia employees on the basis of Union representation, and
seeking to represent former Tacoma employees at Centralia. Dkt. No. 79 at 7. However, the Regional Director of
NLRB Region 19 in Seattle subsequently withdrew the complaint against the Unions and dismissed the unfair labor
23   practice charge. *Id.* at 7–8. The Court lifted the stay after the NLRB's Acting General Counsel denied UNFI's appeal
of the Regional Director's order withdrawing the complaint. *Id.* at 8. In April 2023, the Fifth Circuit denied UNFI's
petition for review and upheld the NLRB's dismissal of the complaint. Dkt. No. 91 at 1–2, 6 n.2; *see United Natural
24   Foods, Inc. v. NLRB*, 66 F.4th 536 (5th Cir. 2023).

settlement. They instead proposed a briefing schedule for the Unions' motion to remand to the arbitrator. Dkt. No. 89 at 1–2. That motion is now fully briefed. Dkt. Nos. 91–96.

## II.   DISCUSSION

The Unions maintain that remand to the arbitrator is required in light of the extremely limited jurisdiction that district courts exercise in reviewing arbitration awards. Dkt. No. 91 at 7–10; *see Sheet Metal Workers' Int'l Ass'n Loc. Union No. 359 v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996). They contend that the arbitrator—not the Court—must determine and implement the "make whole" remedy in the October 2019 Award. Dkt. No. 91 at 10–17; *see also id.* at 10 ("The Award did not specify the scope of its 'make whole' order."); Dkt. No. 95 at 4 ("The Award did not specify the dollar amount owed to those employees or otherwise provide a formula indicating how to calculate damages."). UNFI advances several arguments against remand. Dkt. No. 93 at 5–6, 9–19. The Court addresses each of them in turn.

### 1.   The Arbitrator's Authority to Revisit the October 2019 Award

UNFI first suggests that the arbitrator "lacks jurisdiction" to revisit or redetermine any part of the October 2019 Award because it is final. *Id.* at 9.

#### (a) The Functus Officio Doctrine and its Exceptions

Despite the substantial latitude the arbitrator retains when it comes to fashioning remedies, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 (9th Cir. 2001), the "functus officio" doctrine prevents an arbitrator from redetermining a final arbitration award. *Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of Am., AFL-CIO, Loc. 631 v. Silver State Disposal Serv., Inc.*, 109 F.3d 1409, 1411 (9th Cir. 1997).[3] "It is a fundamental common law

---

[3] "Functus officio" is Latin for "office performed," and "means that once an arbitrator has issued his final award[,] he may not revise it." *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC, Loc. 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 845 (7th Cir. 1995).

1    principle that once an arbitrator has made and published a final award his authority is exhausted

2    and he is functus officio and can do nothing more in regard to the subject matter of the arbitration."

3    *Silver State Disposal*, 109 F.3d at 1411 (cleaned up). There are, however, three exceptions to this

4    doctrine: "an arbitrator can correct a mistake which is apparent on the face of his award, complete

5    an arbitration if the award is not complete, and clarify an ambiguity in the award." *Id.* (quoting

6    *McClatchy Newspapers v. Central Valley Typographical Union No. 46, Int'l Typographical*

7    *Union*, 686 F.2d 731, 734 n.1 (9th Cir. 1982)). The completion exception applies "when an

8    arbitration award fails to resolve an issue or 'specify the remedy in definite terms.'" *Id.* (quoting

9    *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 279 (1st Cir. 1983)). The

10   ambiguity exception, on the other hand, applies "when 'the award, although seemingly complete,

11   leaves doubt whether the submission has been fully executed.'" *Id.* (quoting *La Vale Plaza, Inc. v.*

12   *R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967)).[4]

13                      *(b)  The Completion Exception Applies to the October 2019 Award*

14            The Court concludes that the completion exception applies to the October 2019 Award. As

15   the Unions note, courts generally remand awards containing the same or a materially identical

16   "make whole" remedy so that the arbitrator may specify that remedy in more definite terms and

17   calculate back pay. *See, e.g.*, *ILWU Loc. 142 v. Land & Constr. Co., Inc.*, 498 F.2d 201, 206 (9th

18   Cir. 1974) (affirming remand to arbitrator to determine amount of backpay); *Int'l Union of*

19   *Operating Engineers, Loc. No. 841 v. Murphy Co.*, 82 F.3d 185, 189–90 (7th Cir. 1996) ("Of

20   course, where the parties cannot agree on the precise amount of back wages and benefits due under

21   a broad make-whole ruling, a party can move the district court to send the matter back to arbitration

22   to resolve the confusion."); *Int'l Bhd. of Teamsters, Loc. 631 v. Transdev Servs., Inc.*, No. 2:20-

23

24   _____

[4] These two exceptions are sometimes commingled. *Id.*; *see Excelsior Foundry Co.*, 56 F.3d at 847 ("An award that fails to address a contingency that has arisen after the award was made is incomplete; alternatively, it is unclear; either way, it is within an exception to the [functus officio] doctrine.").

CV-683-JCM (EJY), 2020 WL 3960415, at *2 (D. Nev. July 13, 2020) (remanding to the arbitrator for an exact calculation of backpay); *Sheet Metal Workers Loc. Union 105 v. Titan Sheet Metal Inc.*, No. ED-CV18-00754-JAK (SPx), 2020 WL 11269821, at *18 (C.D. Cal. July 13, 2020) (completion exception to functus officio doctrine applied where award included "make whole" remedy; remanding case to arbitrator to specify the remedy in definite terms), *aff'd*, 858 F. App'x 247 (9th Cir. 2021); *Gulf Coast Rebar*, 194 F. Supp. 3d at 1101–02 (remand to the arbitrator for a calculation of damages falls squarely within the exceptions to the functus officio doctrine); *Unite Here Loc. 26 v. Taj Hotel Boston*, 731 F. Supp. 2d 95, 101 (D. Mass. 2010) (when an arbitration award requires reinstatement and back pay, and the parties cannot agree on the amount of back pay, the matter should generally be remanded to the original arbitrator to clarify the award); *Coca-Cola Bottling Co. v. Int'l Bhd. of Teamsters, Loc. 991*, 506 F. Supp. 2d 1052, 1056–57 (S.D. Ala. 2007) (where arbitrator "entered an award with a make-whole remedial component, and the parties [were] unable to agree on the computation of that make-whole remedy," the district court will follow "the normal course of action," which is "to resubmit th[e] dispute to the original arbitrator to clarify the Award on th[at] narrow point").

This is not a case in which the required calculations are so simple and undisputed that the Court could perform them on a summary judgment record. *See Madison Indus.*, 84 F.3d at 1194 & n.11 (remand to an arbitrator is unnecessary when there are no genuine factual disputes and the damages calculation "is straightforward" and can be clarified by reference to evidence not involving the arbitrator's special expertise). The Court again agrees with the Unions on this point. The "make whole" remedy necessitates determining "base wages, overtime, premium pay, leave benefits and pay, and health and retirement benefits" under the CBAs, to name just a few of the considerations, "and then applying them to the individual circumstances of hundreds of workers"—a task that is bound to be fraught with disputes of fact. Dkt. No. 91 at 10–11.

Consideration of these factors is a far cry from conducting a ministerial calculation, and they directly implicate the arbitrator's special expertise. *See id.* at 11–15 (itemization of considerations that could be relevant to determining "make whole" remedy).

### (c) UNFI's Counterarguments: Tolling of Back Pay, Factual Disputes, and "Straightforward" Back Pay Calculations

UNFI disagrees. It maintains that the requisite damages calculations are "straightforward" and can be resolved on a summary judgment record. Dkt. No. 93 at 11, 14. UNFI proffers two reasons why this is so. First, it claims that it made unconditional offers of employment at Centralia to all Tacoma employees in November and December 2019. *Id.* at 15–16. UNFI notes that "all but a small handful of Tacoma employees" rejected these unconditional offers, and that those rejections toll its back pay liability. *Id.* at 16. According to UNFI, this tolling defense "is plainly amenable to determination on summary judgment, and a decision in UNFI's favor would dispatch . . . the need for allegedly complicated 'make whole' remedy calculations." Dkt. No. 93 at 15–16.

The Unions counter that UNFI's tolling defense is "meritless" and is, in any event, an issue for the arbitrator to decide. Dkt. No. 91 at 18; s*ee also id.* at 19–20 ("Whether UNFI's 'offer' letters tolled its damages liability to affected unit members is a question of the make-whole remedy's duration. So too is the subsidiary question of whether *Ford Motor* supplies the applicable standard to determine the point at which damages are tolled for violations of collective bargaining agreements.").[5] The Court agrees that the arbitrator should handle this dispute on remand. UNFI cites no authority for the proposition that the arbitrator cannot account for the back pay tolling

---

[5] The Unions insist that the standard for tolling back pay liability from *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219 (1982) is unique to the Title VII context and is inapplicable to the CBAs at issue. Dkt. No. 91 at 20–22. They claim that under the NLRB tolling standard, "a reinstatement offer tolls backpay liability only if it is specific, unequivocal, unconditional, and offers the same or substantially equivalent employment to the discriminatee's original position." *Id.* at 21 (citing *Johnston Fire Servs., LLC*, 371 NLRB No. 56 (2022)). And they assert that UNFI's offers did not entail substantially equivalent employment, were not unconditional, and were not specific or unequivocal. *Id.* at 22–25.

1   issue when specifying the proper "formulae" for implementing the "make whole" remedy and

2   conducting the back pay calculation on remand. *See, e.g.*, *Transp. Workers Union of Am. v. Veolia*

3   *Transp. Servs., Inc.*, 211 F. Supp. 3d 505, 516–18 (E.D.N.Y. 2016) (remanding to arbitrator to

4   calculate back pay and consider effect of rejected unconditional offers of reinstatement).

5          UNFI next dismisses the Unions' concerns about factual disputes as "hypothetical and

6   overblown." Dkt. No. 93 at 15. It asserts that "there will be no genuine dispute as to the data points

7   underlying the calculations necessary to fashion a damages award, and those calculations will be

8   far less complicated than the Unions suggest." *Id.* at 17. But UNFI never really explains why or

9   how those calculations are so straightforward. For example, while UNFI concedes that "there are

10  several different rates of pay at issue, and the contracts provide for multiple steps in the wage

11  progression with incremental increases every six months," it nonetheless conclusorily asserts that

12  determining the appropriate regular rate for each employee will be "a matter of simple arithmetic"

13  and entail mere "reference to historical pay records[.]" *Id.* at 17.

14         The closest thing to support UNFI supplies is its citation to *International Union of*

15  *Bricklayers and Allied Craftworkers, Local 5 v. Inter-State Tile & Mantel Co.*, No. 1:07-CV-1150,

16  2010 WL 2034693 (M.D. Pa. Mar. 18, 2010) for the proposition that a district court "may consult

17  the relevant [CBA] agreements to establish the formulae provided therein and apply the number

18  of work hours to those formulae." *Id.* at 18. This argument (1) presupposes which components,

19  considerations, and calculations comprise the "make whole" remedy (something the arbitrator

20  must specify in the first instance) and (2) elides the fact that reference to and application of the

21  CBAs is squarely within the specialized purview of the arbitrator. Moreover, UNFI indicates that

22  it plans to "present evidence relevant to mitigation" but simultaneously avers, again without

23  explanation or supporting analysis, that such evidence "will not create issues of material fact[.]"

24  *Id.* at 18–19. Suffice it to say that the Court does not agree. In the words of the Unions, "UNFI

cannot seriously expect that determining the classifications, step progressions, historical hours, applicable premiums, interim earnings, and mitigation efforts will be devoid of factual disputes." Dkt. No. 95 at 6. Even if the "formulae" used to calculate back pay damages prove to be less complicated than those foretold by the Unions, it is for the arbitrator to establish and specify those calculations, conduct those calculations, and account for any other considerations relevant to the "make whole" remedy. *See, e.g., id.* ("UNFI does not explain why this Court can, in the first instance, decide how to measure the value of lost healthcare and pension contributions when these involve choices among various options and potential actuarial evidence.").

### (d) More Counterarguments: Retention of Jurisdiction, Arbitrator Duffy's November 2019 Refusal to Clarify the Award, and Finality Considerations

UNFI proffers several other reasons why, in its view, the arbitrator lacks authority to revisit the October 2019 Award. *See* Dkt. No. 93 at 9–11. None are availing. It points to Arbitrator Duffy's 60-day retention of jurisdiction as proof that he "did not intend to retain jurisdiction after that date" for any purpose. *Id.* at 9–10 ("That 60-day period expired in December 2019—over three-and-a-half years ago."). UNFI similarly contends that Arbitrator Duffy "did not view the Award as incomplete or in need of clarification"—an assertion it supports by pointing to his November 2019 letter declining to clarify the October 2019 Award. *See* Dkt. No. 94-1 at 7–8 (the Unions' request for clarification or modification of award); *id.* at 10 (Arbitrator Duffy's response). But the arbitrator's personal belief as to jurisdiction—including the arbitrator's decision to retain or relinquish jurisdiction—does not impair the Court's authority to remand the award for completion or clarification of the remedy under the exceptions to the functus officio doctrine. *See Gulf Coast Rebar*, 194 F. Supp. 3d at 1102 & n.1. And Arbitrator Duffy's retention of jurisdiction to "aid[] the Parties in the implementation of the remedy," Dkt. No. 72-1 at 987, suggests he foresaw some loose ends with respect to the make-whole remedy.

Moreover, the Unions' November 2019 request, although framed as one for "clarification," called for more than mere clarification, completion, or implementation of the award. The Unions asked Arbitrator Duffy to find that UNFI's subsequent conduct violated the October 2019 Award:

> Local 117 seeks to clarify the award by confirming that UNFI's continued lay-offs violate the award and are subject to reinstatement, make whole, and transfer remedies. The need for clarification arises from the fact that UNFI has engaged in additional waves of lay-offs after the 'first wave(s)' referenced in the award.

Dkt. No. 94-1 at 7. Put differently, the November 2019 request for "clarification" was different than the back pay calculations at hand.[6] Arbitrator Duffy accordingly declined the request because it went "beyond the ordinary remedy issues that arise post award." Dkt. No. 94-1 at 10. He then cited to Sections 6.D and 6.E of the Code of Professional Responsibility for Arbitrators of Labor Management Disputes, noting that "[t]he rule in labor arbitration is that no clarification or interpretation of an award is permissible without the consent of both parties." *Id.* Thus, Arbitrator Duffy's letter declining the Unions' November 2019 request for "clarification" is not the wholesale, indefinite disavowal of jurisdiction that UNFI champions. And to the extent UNFI contends that the arbitrator lacks authority to complete the October 2019 Award without its mutual consent, that too is a losing argument. *See Silver State Disposal*, 109 F.3d at 1412 (a joint request is unnecessary when the arbitrator's clarification or completion of the award falls within the exceptions to the functus officio doctrine); *Unite Here Loc. 26*, 731 F. Supp. 2d at 102 (dismissing as immaterial arbitrator's belief that he lacked jurisdiction to clarify the amount due without the parties' consent and noting that a district court has jurisdiction in Section 301 actions to resubmit the matter to the original arbitrator).

---

[6] Indeed, Local 117's attorney initially characterized the request as one for "clarification *or modification* of the award[.]" Dkt. No. 94-1 at 7 (emphasis added).

ORDER REMANDING CASE TO ARBITRATOR - 10

UNFI next asserts that because the October 2019 Award is final, "the arbitrator's determination that he lacks jurisdiction to 'clarify' or address the Unions' claims regarding remedial issues—*i.e.*, damages—must be accepted as final as well." Dkt. No. 93 at 10. This argument overlooks the completion exception to the functus officio doctrine. Again, even when an award is final and thus not susceptible to redetermination, a district court may remand for clarification or completion of the remedy. *Silver State Disposal*, 109 F.3d at 1411. The arbitrator's jurisdictional determinations do not override the exceptions to the functus officio doctrine. *Id.* at 1412; *Unite Here Loc. 26*, 731 F. Supp. 2d at 102. The Court further adds that "the arbitrator need not complete the mathematical computations of the award for the award to be final and reviewable." *Millmen Loc. 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1377 (9th Cir. 1987).

### (e) Equitable Extension of the CBAs and Clarification of the Reinstatement and Transfer Directive

The last of UNFI's jurisdictional arguments relates to the portion of Arbitrator Duffy's award directing UNFI to "allow any employees laid off in the first wave(s) of layoffs in Tacoma to transfer to Centralia under the same terms and conditions that they had in Tacoma." Dkt. No. 1-1 at 21. The Unions contend that the arbitrator must also "clarify the injunctive reinstatement and transfer directives" in the award because the CBAs have now expired. Dkt. No. 91 at 10. More specifically, the Unions "intend to argue that the CBAs should be equitably extended—and employees' monetary recovery concordantly increased—for a period equivalent to UNFI's delay in enforcing the Award." *Id.* at 16. According to the Unions, this measure "is necessary to restore the true status quo and prevent UNFI from benefitting from its unlawful delay and non-compliance with the Award." *Id.* ("[A]t this stage, an arbitrator must address this issue to complete the award."); *see also id.* at 17 ("UNFI's intransigence in complying with the Award past the CBAs'

1    expiration has nullified th[e] value [of the reinstatement injunctive relief] because, absent equitable

2    extension, reinstated employees would merely work under UNFI's unilaterally-determined and

3    inferior terms."). They claim that Arbitrator Duffy "anticipat[ed] that UNFI would offer transfers

4    at contractual rates to employees still working," and that "UNFI's refusal to comply with that

5    aspect of the Award created a latent ambiguity of the sort courts have found wanting clarification."

6    Dkt. No. 95 at 9.

7          The Unions' attempt to manufacture an additional ambiguity or gap in the remedy is

8    unavailing. There is nothing ambiguous about the injunctive reinstatement and transfer portion of

9    the remedy. Arbitrator Duffy made clear that UNFI was to reinstate all employees laid off in the

10   first waive(s) of the Tacoma layoffs and permit those employees to transfer to Centralia under the

11   same terms and conditions that they had in Tacoma. Dkt. No. 1-1 at 21. To the extent UNFI's post-

12   award conduct violated the terms of the October 2019 Award or UNFI's delayed compliance

13   rendered a portion of the remedy less valuable, those issues can be resolved in a separate grievance

14   and arbitration proceeding. *See* Dkt. No. 93 at 11. Thus, equitable extension of the CBAs and

15   clarification of the injunctive reinstatement and transfer directives exceeds the scope of the limited

16   remand here.

17          2.   Arbitrator Duffy's Retirement and Remand to a New Arbitrator

18          UNFI maintains that remand is "not feasible" because Arbitrator Duffy has since retired,

19   and it is unreasonable to expect him to emerge from retirement to complete or clarify the "make

20   whole" remedy given his November 2019 refusal to do so. Dkt. No. 93 at 12–13. This argument

21   again mischaracterizes Arbitrator Duffy's November 2019 letter. As discussed above, Arbitrator

22   Duffy did not previously decline to complete the "make whole" remedy and calculate UNFI's back

23   pay liability. He determined only that Local 117's November 2019 request involved more than

24   "clarifying" the remedy and required the consent of both parties. That decision does not prevent

Arbitrator Duffy from now specifying the "make whole" remedy and conducting the back pay damages calculation on remand. The Court thus agrees that the parties should at least inquire into Arbitrator Duffy's availability. *See* Dkt. No. 91 at 17–18.

It is true that remand to the same arbitrator is preferred. *Gulf Coast Rebar*, 194 F. Supp. 3d at 1100–01. UNFI, however, cites no authority or rule barring remand to a new arbitrator when the original arbitrator is unavailable, and has therefore waived the argument. *Pulte Home Corp. v. TIG Ins. Co.*, 794 F. App'x 587, 589 (9th Cir. 2019). And the Unions point to at least one case in which this was permitted. *See, e.g.*, *United Gov't Sec. Officers of Am., Loc. 38 v. Wackenhut Corp.*, No. CV-04-1858-MO, 2005 WL 2104849, at *4–5 (D. Or. Aug. 29, 2005) (original arbitrator passed away after issuing decision; remanding for further proceedings and directing parties to select a new arbitrator according to the procedure set forth in the governing CBA); *see also U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 831–32 (10th Cir. 2005) (allowing remand despite the death of a panel member because the original panel had already issued an award and only needed to determine damages); *Trade & Transp., Inc. v. Nat. Petrol. Charterers Inc.*, 931 F.2d 191, 194–96 (2d Cir. 1991) (confirming arbitration award on remand under same circumstances). Should Arbitrator Duffy decline to emerge from retirement for this case, the Court is confident that the new arbitrator selected by the parties will be capable of standing in the shoes of Arbitrator Duffy, becoming familiar with the record, completing the "make whole" remedy, and conducting the back pay calculations. UNFI appears to suggest that appointment of a new arbitrator will convert the limited remand into "an entirely new arbitration proceeding," Dkt. No. 93 at 13, but the Ninth Circuit has made clear that recommitting an issue to the arbitrator for clarification or completion "does not effectuate an appeal to the arbitrator, a new trial, or an opportunity to relitigate the issue." *McClatchy Newspapers*, 686 F.2d at 734 n.1; *see also Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 130 (2d Cir. 2010) ("[A]pplying a broad rule requiring that a new panel be

convened to vacancies occasioned by resignations would open the door to significant potential for manipulation.").[7] The fact that someone new might conduct the proceedings on remand does not alter this principle.

### 3. Pending Related Grievances

UNFI next wishes to make clear that the Unions' three other pending grievances (dated October 29, November 9, and December 6, 2019), although related to this proceeding, fall outside the scope of remand. Dkt. No. 93 at 13–14. The Unions appear to agree for the most part. They note that these grievances "do not or only partially overlap with the subjects of an Award clarification." Dkt. No. 95 at 12 ("The first two [grievances] are entirely tangential. They protest only UNFI's failure to comply with the award, not the meaning of it."). According to the Unions, however, the third (December 9th) grievance "implicates relief to which subsequent waves of dischargees are entitled"—an issue they claim is "a proper topic of clarification" on remand. *Id.* The Court disagrees. This appears to be a variation of the Union's argument that the reinstatement and transfer directive contains a "latent ambiguity" in light of UNFI's post-award conduct. As noted above, UNFI's conduct does not render the plain language of Arbitrator Duffy's reinstatement and transfer directive ambiguous or otherwise in need of clarification. The Court accordingly reiterates that remand is limited to completion of the "make whole" remedy and calculation of UNFI's back pay liability. None of the Unions' related grievances fall within that scope.

---

[7] UNFI's position that there is no longer a contractual basis for arbitration because the CBAs have since expired therefore misses the mark. Dkt. No. 93 at 13. Put differently, that argument is premised on the false notion that remand for completion of the "make whole" remedy is a new arbitration proceeding. It is not. And the procedure for selecting an arbitrator set forth in the CBAs still governs on remand should Arbitrator Duffy decline to temporarily emerge from retirement. *See* Dkt. No. 91 at 18.

ORDER REMANDING CASE TO ARBITRATOR - 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

    4.  <u>Waiver</u>

    UNFI last contends that the Unions waived their right to seek remand for clarification or
completion of the October 2019 Award because they "failed to invoke that right for over three
years after UNFI filed its Complaint[.]" Dkt. No. 93 at 19. It also argues that the Unions
"affirmatively waived" their right to seek remand in the parties' January 2020 Joint Status Report,
where they agreed to bifurcate this case into a liability phase and damages phase. *Id.* UNFI
specifically points to the parties' "agree[ment] that a period of damages discovery lasting 120
calendar days is appropriate." Dkt. No. 28 at 5; *see also* Dkt. No. 37 at 2 ("If the Court finds for
the Unions on the issue of liability, the Court will set a[] 120-day deadline for the parties to
complete discovery relating to damages, as well as other pretrial deadlines.").

    Neither argument succeeds. As an initial matter, UNFI fails to provide any authority
suggesting that a party can waive or otherwise forfeit its right to seek remand for clarification or
completion of an arbitrator's award. The Unions did not do so here by waiting to seek remand until
after the Court confirmed the October 2019 Award. Indeed, it makes sense that the Unions would
wait for the threshold validity determination prior to seeking remand for a completion of the
challenged award's remedy. Had the Court ruled in UNFI's favor and vacated the award, there
would have been no point in seeking remand for clarification or completion of the award. Nor does
the January 2020 Joint Status Report constitute an "affirmative waiver" of the right to seek remand.
"[A] joint status report is not intended to be a binding statement of issues[.]" *Genuine Enabling
Tech. LLC v. Nintendo Co.*, No. C19-00351-RSM, 2019 WL 3779867, at *3 (W.D. Wash. Aug.
12, 2019). But even so, the parties' agreement to bifurcate this case and establish a conditional
120-day discovery period for damages does not mean that the Unions promised to not seek remand
for completion of the remedy under any circumstances.

### III.   CONCLUSION

The Unions' motion to remand is accordingly GRANTED IN PART. Dkt. No. 91. The Court ORDERS as follows:

1.      This matter is REMANDED to the arbitrator for the limited purpose of completing the "make whole" remedy in the October 2019 Award.

    a.   Within 14 days of this Order, the parties shall jointly correspond with Arbitrator Duffy requesting that he reassert jurisdiction and take such steps as may be necessary to complete the "make whole" remedy in the October 2019 Award.

    b.   To the extent Arbitrator Duffy declines the parties' request, the parties shall select an arbitrator pursuant to the selection process set forth in the CBAs within 14 days of Arbitrator Duffy's declination.

2.      The parties must file a Joint Status Report no later than 21 days from the date of this Order addressing whether this case should be stayed during the arbitration proceedings, and if not, proposing a schedule for further proceedings. *See* Dkt. No. 89 at 1 n.1.

Dated this 30th day of March, 2024.

Lauren King
United States District Judge

ORDER REMANDING CASE TO ARBITRATOR - 16